IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SETH LINS, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 21-3975 |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA SOCIETY FOR THE | : | |
| PREVENTION OF CRUELTY TO | : | |
| ANIMALS; NICOLE WILSON, | : | |
| individually and in her official capacity; | : | |
| LISA GERMANIS, VMD, individually and | : | |
| in her official capacity; JENNIFER | : | |
| NIELDS, Humane Society Police Officer; | : | |
| and DOES 1 to 10, | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM OPINION</u>

Smith, J.                                                                        June 23, 2023

This case involves a former puppy mill owner suing an animal welfare organization and its employees over the treatment of his dogs on the day that said organization seized them. The paramount issue before the court is whether certain surrender and release forms signed by the plaintiff exculpate the defendants from liability in this case. The court ultimately finds that they do and therefore grants summary judgment in the defendants' favor.

In September 2019, the defendant organization executed a search warrant of the plaintiff's property after receiving reports of multiple dogs suffering from unsanitary conditions and health issues. Said organization seized the plaintiff's dogs and transported them away in vans. Due to a malfunctioning air conditioner in one of the vans, some of the dogs suffered from heat stroke and at least one died. Nevertheless, during the seizure, the plaintiff signed a surrender and release form which, among other things, stated that the plaintiff agreed to release the defendants from any claim

or loss "arising out of the negotiation or execution of this agreement, the removal of any animal subject to this release or the transfer of ownership of the within animal(s) to the [organization]." Following the seizure, the plaintiff pleaded guilty to numerous counts related to him running the puppy mill. As a condition of his plea, the plaintiff signed another surrender and release form near-identical to the one he signed on the day of the seizure. Months later, the plaintiff was again investigated after suspicions arose of him engaging in similar illegal activities. During this investigation, his computers were seized and allegedly damaged after being subjected to forensic examination.

The plaintiff brought this action against the defendants in September 2021. His amended complaint—the operative complaint in this matter—contained six counts: (1) Fourth Amendment unreasonable seizure of Lins' dogs, (2) Fourth Amendment unreasonable seizure (*Monell*), (3) Fourteenth Amendment due process, (4) Fourteenth Amendment due process (*Monell*), (5) Fourth Amendment unreasonable seizure of computers and files, and (6) negligence. The defendants have now motioned for summary judgment on all counts. Specifically, the defendants assert that the surrender and release forms signed by the plaintiff shield them from liability in this case. Alternatively, the defendants argue that all counts raised by the plaintiff fail as a matter of law. For the reasons laid out in this opinion, the court must properly grant the defendants' motion.

To begin, the court finds the release clause within the surrender and release forms to be enforceable as it relates to each of the plaintiff's claims. Regarding his constitutional claims, the court finds that (1) the plaintiff voluntarily signed the forms, and (2) the forms are relevant to the public interest. Regarding his state law claim, the court finds that at least the second form satisfies the elements of a contract under Pennsylvania law. Accordingly, the forms exculpate the defendants from the plaintiff's present suit. Furthermore, even if there were no release, the court

would still enter summary judgment for the defendants on Counts II through V. First, the plaintiff's *Monell* claims—Counts II and IV—fail because he has identified no policies or customs that have caused his alleged injuries. Moreover, the plaintiff's due process claims—Counts III and IV—are improperly raised, as he had adequate post-deprivation due process afforded to him, namely state-law remedies (e.g., conversion). Finally, the plaintiff has effectively abandoned Count V by not responding to the defendants' arguments regarding the count in either his response brief or sur-replies. Consequently, given these findings, the court must enter judgment in the defendants' favor on all counts.

## I.     PROCEDURAL HISTORY

On September 3, 2021, the plaintiff, Seth Lins ("Lins"), initiated this action *pro se* by filing a complaint against the Pennsylvania Society for the Prevention of Cruelty to Animals ("PSPCA"), Nicole Wilson ("Wilson"), Lisa Germanis ("Germanis"), Jennifer Nields ("Officer Nields"), and "Does 1 to 10."[1] *See* Doc. No. 2. Wilson and Germanis were sued in both their individual and official capacities. *See id.* The complaint alleged that the defendants committed animal cruelty against dogs owned by Lins, ultimately resulting in the deaths of some. The complaint contained nine counts: (1) Fourth Amendment unreasonable seizure of Lins' dogs, (2) Fourth Amendment unreasonable seizure—illegal official policy or custom, (3) Fourth Amendment unreasonable search and seizure of Lins' dogs—ratification of illegal actions, (4) Fourth Amendment unreasonable seizure of dogs—custom or tolerance of acquiescence, (5) Fourth Amendment failure to turn and supervise, (6) Fourteenth Amendment due process, (7) Fourteenth Amendment due process—illegal official policy or custom, (8) Fourteenth Amendment due process—custom or tolerance of acquiescence, and (9) Fourteenth Amendment due process—failure to train and

---

[1] Lins filed *pro se* specifically "with the intention of finding local counsel." Compl. at 2, Doc. No. 2.

supervise. *See* Compl. at 16–36. Counts II through V and VII through IX were brought exclusively against the PSPCA. *See id.* at 17–29, 31–36. Count VI was brought exclusively against Officer Nields and the Does. *See id.* at 29–31. All counts were brought pursuant to section 1983.[2] On November 4, 2021, the defendants filed a motion to dismiss the complaint. *See* Doc. No. 9.

On December 17, 2021, local counsel filed a notice of appearance on behalf of Lins.[3] *See* Doc. No. 14. The court subsequently issued an order permitting Lins to file an amended complaint. *See* Doc. No. 19. Lins filed his amended complaint—the operative complaint in this case—on February 17, 2022. *See* Doc. No. 20. The amended complaint named the same defendants as the original complaint but only contained six counts: (1) Fourth Amendment unreasonable seizure of Lins' dogs, (2) Fourth Amendment unreasonable seizure (*Monell*), (3) Fourteenth Amendment due process, (4) Fourteenth Amendment due process (*Monell*), (5) Fourth Amendment unreasonable seizure of computers and files, and (6) negligence.[4] *See* Am. Compl. at ¶¶ 152–262, Doc. No. 20. The defendants answered the amended complaint on March 3, 2022, which they subsequently amended a day later. *See* Doc Nos. 22, 24.

---

[2] Under section 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Because the PSPCA acted in this case as an entity "statutorily authorized to enforce Pennsylvania laws pertaining to criminal cruelty-to-animals violations," it can be subject to liability under section 1983. *Allen v. Pa. Soc'y for the Prevention of Cruelty to Animals*, 488 F. Supp. 2d 450, 462 (M.D. Pa. 2007).
[3] Prior to this, Lins had motioned for the court to hold the matter in abeyance for 60 days, *see* Doc No. 10, which the court granted. *See* Doc. No. 13.
[4] The "*Monell*" counts refer to the Supreme Court case *Monell v. Department of Social Services*, in which the Court held that Congress "intend[ed] municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978). *Monell* liability can apply to private institutions such as the PSPCA that employ quasi-state actors. *See Hernandez v. District of Columbia*, 845 F. Supp. 2d 112, 116 n.4 (D.D.C. 2012).

On August 19, 2022, the defendants filed a motion for summary judgment. *See* Doc. No. 36. The defendants' motion mainly focused on the merits of Lins' amended complaint, arguing that all six counts failed as a matter of law. *See* Defs.' Mem. of Law in Supp. of the Mot. for Summ. J.  ("Defs.' Mem.") at 6–31, Doc. No. 36. On October 11, 2022, Lins filed a response in opposition to the motion for summary judgment.[5] *See* Doc. No. 41. Two months later, the defendants filed a reply to Lins' response, in which the defendants shifted the focus of their argument. *See* Doc. No. 49. Specifically, following the receipt of newly obtained discovery, the defendants argued that Lins signed two separate surrender and release forms ("Surrender and Release Forms") that exculpated the defendants from liability in this suit.[6] *See* Defs.' Suppl. Mem. of Law and Reply to Pl.'s Resps. in Opp'n to Defs.' Mot. for Summ. J. ("Defs.' Reply") at 9–12, Doc. No. 49. A series of three sur-replies followed—two from Lins and one from the defendants— in which the parties debated the issue of the Surrender and Release Forms. *See* Doc. Nos. 54, 56, 62. On February 16, 2023, the court heard oral argument on the defendants' motion for summary judgment, which is now ripe for adjudication.

## II.    FACTUAL ALLEGATIONS

The factual allegations here arise out of Lins' operation of an illegal dog kennel—a.k.a., "puppy mill"—at his residence. In 2019, following the execution of a search warrant, Dr. Danielle Ward ("Dr. Ward") reported to the PSPCA the operation of said kennel and accompanying concerns of animal cruelty. *See* Defs.' Statement of Undisputed Material Facts ("Defs.' Facts") at

---

[5] The court had granted Lins an extension of time to file his response. *See* Doc. No. 40. The court continued to grant various extensions of time and motions for leave regarding the subsequent reply and sur-replies. *See* Doc. Nos. 44, 48, 53, 58, 60.

[6] When it comes to arguments being raised for the first time in a reply brief, "[c]ourts ordinarily either decline to consider [such] arguments . . . or afford the non-movant the opportunity to file a sur-reply brief before granting summary judgment on a newly raised basis." *Troso v. City of Atlantic City*, No. 10-CV-1566, 2013 WL 1314738, at *3 n.6 (D.N.J. Mar. 28, 2013) (citing *Alston v. Forsyth*, 379 F. App'x 126, 129 (3d Cir. 2010)). Here, because the court ultimately permitted Lins to file a sur-reply, *see* Doc. No. 53, the court will consider the defendants' release defense.

¶¶ 1–2, Doc. No. 36-1; Pl.'s Resps. to Defs.' Statement of Undisputed Material Facts ("Pl.'s Facts") at ECF p. 1, Doc. No. 54-1. Specifically, Dr. Ward reported unsanitary living conditions for the dogs, general unsanitary conditions within Lins' house, and multiple instances of dogs suffering from health issues. *See* Defs.' Facts at ¶¶ 2–4; Pl.'s Facts at ECF p. 1. After receiving Dr. Ward's report, the PSPCA secured a warrant for the seizure of all animals on Lins' property.[7] *See* Defs.' Facts at ¶ 6; Pl.'s Facts at ECF p. 1.

On September 4, 2019, the PSPCA executed its warrant. *See* Defs.' Facts at ¶ 7; Pl.'s Facts at ECF p. 1. Present at the search was Officer Nields—a humane law enforcement officer at the PSPCA—who observed and detailed the unsanitary conditions and health concerns reported by Dr. Ward. *See* Defs.' Facts at ¶¶ 8–10; Pl.'s Facts at ECF p. 1. During the search, the PSPCA seized all of Lins' dogs and transported them to vans, one of which lacked functioning air conditioning. *See* Pl.'s Facts at ECF p. 6. Due to hot weather, at least two of the dogs suffered from heat stroke in transportation and at least one dog died. *See id.* at ECF p. 5. The defendants have admitted to these facts. *See id.*

On the day of the search, Lins signed one of the Surrender and Release Forms, which surrendered 25 of his dogs to the PSPCA. *See* Defs.' Mem., Ex. E, Pennsylvania SPCA Surrender and Release Form ("First Surrender and Release Form") at ECF p. 4, Doc. No. 36-6. Crucially, the form contained the following release clause:

> Owner agrees to forever release, waive and give up and to forever hold the Pennsylvania SPCA and its officers, employees and agents harmless from any claim or loss of any kind whatsoever, whether past, present or future, whether known or unknown at this time, arising out of the negotiation or execution of this agreement, the removal of any animal subject to this release or the transfer of ownership of the within animal(s) to the PSPCA.

---

[7] Under Pennsylvania law, the PSPCA may be issued search warrants to search property on which cruelty to animals is suspected to occur. *See* 18 Pa. C.S. § 5553.

*Id.* On January 22, 2020, Lins signed the second Surrender and Release Form, which surrendered another 32 dogs to the PSPCA.[8] *See* Defs.' Mem., Ex. F, Pennsylvania SPCA Surrender and Release Form ("Second Surrender and Release Form") at ECF pp. 2–3, Doc. No. 36-7. The form contained a release clause identical to that of the first one.

On June 30, 2020, Lins entered into a plea agreement, pleading guilty to various counts related to his running of the illegal kennel. *See* Defs.' Facts at ¶ 12; Pl.'s Facts at ECF p. 1. In negotiating the plea agreement, an assistant district attorney for Lancaster County included within the conditions for said agreement the "[s]urrender of any other dogs/puppies attached to Lin's [sic] business," which seemingly resulted in the second Surrender and Release Form. *See* Defs.' Reply, Ex. O, Email from Trista Boyd to Daniel McGarrigle ("Boyd/McGarrigle Email") at ECF p. 26, Doc. No. 49-1 ("[T]he PSPCA will seek no further restitution if he . . . surrenders the dogs/puppies."). Lins' ultimate sentence included, among other things, two years' probation and a $10,000 restitution payment to be paid to the PSPCA. *See* Defs.' Facts at ¶ 13; Defs.' Mem., Ex. G, Criminal Docket at ECF p. 35, Doc. No. 36-8.

Approximately eight months into Lins' probation, the PSPCA received a tip about another puppy mill possibly owned by Lins. *See* Defs.' Facts at ¶¶ 14–17; Pl.'s Facts at ECF p. 2. Accordingly, pursuant to a search and seizure warrant, Officer Nields executed a search of Lins' property on March 12, 2021. *See* Defs.' Facts at ¶¶ 20–21; Pl.'s Facts at ECF p. 2. She was accompanied by another PSPCA officer, two Lancaster County detectives, and a Pennsylvania state trooper during this search. *See* Defs.' Facts at ¶ 21; Pl.'s Facts at ECF p. 2. During the search,

---

[8] The defendant's Exhibit F appears to actually be two separate surrender and release forms signed by Lins on the same day. Nevertheless, both parties have treated this as being one form. Moreover, it is not totally clear precisely how many dogs Lins surrendered over to the PSPCA. The defendants claim 56 while Lins claims 54. *Compare* Defs.' Facts at ¶ 11, *with* Pl.'s Facts at ECF p. 1. Meanwhile, the number of dogs referenced in the Surrender and Release Forms seemingly adds up to 57. The court ultimately finds this discrepancy inconsequential to its decision, however.

six computers owned by Lins were seized, though the parties disagree over whether Officer Nields or the Lancaster County detectives physically seized said computers. *See* Defs.' Facts at ¶ 22; Pl.'s Facts at ECF p. 2. Thereafter, two additional Lancaster County detectives within the district attorney's office conducted forensic examinations on the six computers. *See* Defs.' Facts at ¶ 23; Pl.'s Facts at ECF p. 2. Afterwards, the district attorney's office returned back to Lins the computers, *see* Defs.' Facts at ¶ 24; Pl.'s Facts at ECF p. 2, which Lins alleges were returned in a damaged and tampered-with state. *See* Am. Compl. at ¶¶ 144–49.

At all times throughout these facts, Wilson worked as Director of Humane Law Enforcement and Shelter Operations at the PSPCA. Likewise, Germanis worked as Medical Director at the PSPCA.

## III.   DISCUSSION

### A.   <u>Standard of Review – Motions for Summary Judgment</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Owens Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ; or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute"). The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that party opposing motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "[s]peculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor"). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Thus, it is not enough to "merely . . . restat[e] the allegations" in the complaint; instead, the non-moving party must "point to concrete evidence in

the record that supports each and every essential element of his case." *Jones v. Beard*, 145 F. App'x 743, 745–46 (3d Cir. 2005) (per curiam) (citing *Celotex Corp.*, 477 U.S. at 322). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted). Furthermore, when one party's claims are "blatantly contradicted by the record, so that no reasonable jury could believe it," the court should not take those claims as true for the "purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## B.    Analysis

As noted above, the defendants move for summary judgment for two distinct reasons. First, they claim that the Surrender and Release Forms shield them from liability in this case. Alternatively, they assert that each of Lins' counts fails as a matter of law. The court largely agrees with the defendants' arguments and therefore will grant their motion for summary judgment. To begin, the court finds it indisputable that the Surrender and Release Forms were voluntarily signed

by Lins and are hence enforceable against all his claims. Moreover, even if the court were to disregard the release, it would still find in the defendants' favor on the merits of Counts II through V for the reasons expressed below.

### 1.    The Surrender and Release Forms

Lins' case ultimately hinges on whether the Surrender and Release Forms are enforceable. Lins argues that the court should not find said forms enforceable at this stage because there is a genuine dispute of material facts as to whether Lins actually signed them. Alternatively, Lins argues that the forms are unenforceable as a matter of law. After due consideration, the court concludes that no reasonable jury could find that Lins did not sign the Surrender and Release Forms and holds that the forms are enforceable. Accordingly, the court must grant the defendants' motion for summary judgment and enter judgment in their favor.

At the outset, the court finds no genuine dispute of material fact when it comes to whether Lins signed the Surrender and Release Forms. Certainly, the defendants have met their initial burden of providing evidence to support their argument that Lins signed said forms. For one, the defendants have produced the actual forms, which bear signatures at the bottom with the name "Seth Lins" printed next to them as well as the initials "SL" throughout the forms. *See* Defs.' Mem., Ex. E, First Surrender and Release Form at ECF p. 4; Defs.' Mem., Ex. F, Second Surrender and Release Form at ECF pp. 2–3. The defendants have also produced further evidence corroborating Lins' signature. For instance, on January 22, 2020—the date of completion of second form—Lins' criminal defense attorney emailed an assistant district attorney stating "[i]t appears that I left court today without taking my carbon copies of the PSPCA Surrender forms that Mr. Lin [sic] completed this morning." *See* Defs.' Reply, Ex. O, Email from Daniel McGarrigle to Trista Boyd ("McGarrigle/Boyd Email") at ECF pp. 20–21. Moreover, at Lins' plea hearing (at

which he was present), both his criminal defense attorney and Officer Nields noted on the record that Lins had surrendered his dogs. *See* Defs.' Reply, Ex. P, Guilty Plea/Sentencing at ECF p. 10, Doc. No. 49-2 ("[H]e *signed* over his ownership interest and the rest of the animals at the preliminary hearing to make sure they could be cared for by the PSPCA." (emphasis added)); *id.* at ECF p. 12 ("[W]hen we did go to the preliminary hearing he did recognize and surrender the remaining dogs . . . ."). This evidence satisfies the defendants' initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.

On the other hand, Lins has not properly responded with evidence that creates a genuine issue for trial. Lins' main counterargument is that he does not remember signing the Surrender and Release Forms. *See* Pl.'s Resp. to Defs.' Reply to Pl.'s Resp. in Opp'n ("Pl.'s Second Sur-Reply"), Ex. 1, Declaration of Seth Lins at ¶¶ 5–7, Doc. No. 62-1 ("I do not recall signing a surrender form on the day of the raid . . . . I was never given a copy of . . . the purported first 'Surrender Form.' . . . I was never given a copy of . . . the purported second 'Surrender Form.'"); Defs.' Reply to Pl.'s Resp. in Opp'n ("Defs.' Sur-Reply"), Seth Lins' Answers to First Set of Interrogs. Directed to Pl. at ECF p. 15, Doc. No. 56 ("I do not recall signing a surrender form on September 4, 2019. . . . I do not recall signing any surrender form on January 22, 2020."). Lins has also supplied a declaration from Michela Huth ("Huth")—a colleague of one of Lins' attorneys in this case—in which she attests that she contacted Lins' criminal defense attorney and that he told her that he has no recollection of the Surrender and Release Forms. *See* Pl.'s Opp'n/Resp. to Defs.' Suppl. Mem. of Law and Reply to Pl.'s Resps. in Opp'n to Defs.' Mot. for Summ. J., Ex. J, Declaration of Michela Huth at ¶¶ 3–6, Doc. No. 54-2.

Ultimately, none of this evidence amounts to a genuine dispute of material fact. "With respect to contractual disputes, federal courts have consistently held that a party's failure to recall

a relevant event is insufficient to raise an issue as to the occurrence of that event." *Gomez v. Rent-A-Center, Inc.*, No. 18-cv-1528, 2018 WL 3377172, at *3 (D.N.J. July 10, 2018) (citing *Batiste v. Island Recs., Inc.*, 179 F.3d 217, 223 (5th Cir. 1999); *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 182 F.3d 51, 55 (1st Cir. 1999); *Posey v. Skyline Corp.*, 702 F.2d 102, 106 (7th Cir. 1983)). Thus, Lins cannot create a genuine dispute simply by saying that he does not recall signing the Surrender and Release Forms when the defendants have provided sufficient evidence showing that he did indeed sign them. Likewise, Huth's declaration creates no genuine dispute, as parties opposing summary judgment may not "rely merely upon bare assertions" to generate such a dispute.[9] *Fireman's Ins. Co.*, 676 F.2d at 969. Accordingly, the court finds that, based on the developed record, no reasonable jury could conclude that Lins did not sign the Surrender and Release Forms.[10]

Not every release is enforceable, of course. The court must therefore analyze whether the release clause contained within the Surrender and Release Forms actually shields the defendants from liability as it applies to Lins' particular claims. Here, the court must apply separate tests to Lins' first five counts and his final count of his amended complaint, as the former are constitutional claims whereas the latter is a state law negligence claim. This distinction is largely inconsequential, though, as the court finds that the release is enforceable as to all Lins' claims.

---

[9] Additionally, the court notes that Huth's declaration is likely inadmissible hearsay, as it offers a statement made by a third party—Lins' criminal defense attorney—to "prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2).

[10] In his final sur-reply, Lins makes an issue out of the fact that the defendants mentioned the existence of 54 separate surrender slips in their motion to dismiss and made no mention of the two Surrender and Release Forms. *See* Pl.'s Second Sur-Reply at 3–5, Doc. No. 62. Yet, is the purpose of discovery not to develop and clarify the facts of the case beyond the allegations made at the pleading and motion-to-dismiss stages? *Cf. Jones*, 145 F. App'x at 745–46 ("[T]he non-moving party cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint; rather, he must point to concrete evidence in the record that supports each and every essential element of his case."). The court is not persuaded that the mention of the surrender slips in the motion to dismiss creates any genuine dispute regarding the Surrender and Release Forms.

a.   <u>Constitutional Claims</u>

The court begins its analysis with Lins' constitutional claims. "The question of waiver of a federally guaranteed constitutional right is . . . a federal question controlled by federal law." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 205 (3d Cir. 2012) (quoting *Brookhart v. Janis*, 384 U.S. 1, 4 (1966)). "[C]ourts must indulge every reasonable presumption against waiver of fundamental constitutional rights." *Id.* (internal quotation marks omitted) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Thus, Lins' signatures on the Surrender and Release Forms alone are not enough to exculpate the defendants from Counts I through V of the amended complaint. The court must instead run an inquiry into whether the forms qualify as permissible waivers of Lins' constitutional rights. The parties both appear to acknowledge this, but disagree over precisely which test the court should apply. Lins argues that the court must treat the Surrender and Release Forms the same as release-dismissal agreements—i.e., agreements that criminal defendants sign in which a liability release is given in exchange for the dismissal of criminal charges—whereas the defendants believe that the facts of this case are distinguishable from release-dismissal cases. *See* Defs.' Reply at 13 n.4. The court need not decide which test is proper, though, because the Surrender and Release Forms are still enforceable in this case even if treated as release-dismissal agreements.

Release-dismissal agreements that waive section 1983 liability are not *per se* unenforceable. *See Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987). Nevertheless, to be enforced, such agreements must be "executed voluntarily, free from . . . misconduct and not offensive to the relevant public interest." *Cain v. Darby Borough*, 7 F.3d 377, 380 (3d Cir. 1993) (en banc). Therefore, the court's first step is to ascertain whether Lins voluntarily released the defendants from liability. "The inquiry into the voluntariness . . . with which a potential . . . plaintiff

waived [their] right to sue entails more than ascertaining whether there was any coercion." *Livingstone v. N. Belle Vernon Borough*, 12 F.3d 1205, 1210 (3d Cir. 1993). Rather, it is a fact-specific inquiry that requires assessing a number of potentially relevant factors. Some of the most common factors examined by courts include (1) "whether the release is clear on its face," (2) "whether the signer [of the release] [was] in custody at the time of signing," (3) "whether the signer was represented by counsel," (4) "whether the signer's attorney drafted the document," (5) "whether the signer expressed any unwillingness," (6) "the time with which the signer considered the document," and (7) whether the signer's "background and experience helped [them] to understand the terms of the release." *Id.* (first alteration in original) (quoting *Woods v. Rhodes*, 994 F.2d 494, 499 (8th Cir. 1993)) (listing the first six aforementioned factors); 3d Cir. Model Jury Instructions § 4.7.3 (including the last aforementioned factor among the six preceding ones).

Here, the facts support a finding of voluntariness. For one, the release's language is clear on its face. To recall, the specific clause in question "forever release[s]" the defendants from claims or losses "of any kind whatsoever, whether past, present or future, whether known or unknown at this time, arising out of the negotiation or execution of this agreement, the removal of any animal subject to this release or the transfer of ownership of the within animal(s) to the PSPCA." Defs.' Mem., Ex. E, First Surrender and Release Form at ECF p. 4; Defs.' Mem., Ex. F, Second Surrender and Release Form at ECF pp. 2–3. Nothing about this particular language is vague or ambiguous—if anything, the clause appears carefully worded to delineate the precise scope of the release. To be sure, the language is broad, covering many potential types of litigation against the defendants. Nevertheless, range and clarity are two different concepts; indeed, judges within this district have upheld releases with similarly broad language. *See, e.g.*, *Jackson v. Temple Univ.*, No. 20-1421, 2023 WL 446879, at *7 (E.D. Pa. Jan. 25, 2023) (enforcing release that "resolve[d] all future

claims and issues arising out of [plaintiff's] injury and . . . forever end[ed] entitlement to any and all future benefits for [plaintiff's] injury"). Thus, this factor weighs in the defendants' favor.

The next few factors also support the release's enforceability. Lins was not in custody at the time of signing either Surrender and Release Form. Moreover, while he does not appear to have been represented by counsel when signing the first form, he was represented upon signing the second one. *See* Defs.' Reply, Ex. O, McGarrigle/Boyd Email at ECF pp. 20–21. Because the Surrender and Release Forms contain identical release language, and therefore have identical effects on the exculpability of the defendants, the court views Lins' representation during the signing of the second form as sufficient cause for having this factor weigh against Lins. It is unclear, however, whether Lins' criminal defense attorney took any part in drafting the second form—in fact, the identical language between the first and second forms suggests that the PSPCA alone drafted it. Thus, this factor weights in Lins' favor. Nevertheless, Lins has provided zero evidence demonstrating any expression of unwillingness on his part to sign the Surrender and Release Forms prior to or immediately after signing them, which further supports the release's enforceability.

Next, Lins had a reasonable amount of time to consider the second form (which again is identical to the first one). Approximately one month passed between the district attorney's office stating that Lins would need to surrender the rest of his dogs in exchange for a plea and the actual signing of the second form. *See* Defs.' Reply, Ex. O, Boyd/McGarrigle Email at ECF pp. 25–26 (sending email to Lins' criminal defense attorney on December 23, 2019). Courts have found mere days to be plenty of time to consider a release. *See, e.g.*, *Jackson*, 2023 WL 446879, at *8. Thus, one month should have been more than sufficient time for Lins to consider whether he truly wished to sign the second Surrender and Release Form. Finally, regarding Lins' background and

experience, Lins has received his GED and attended trucking school, *see* Defs.' Sur-Reply, Seth

Lins' Answers to First Set of Interrogs. Directed to Pl. at ECF p. 12, which supports the notion

that he possessed enough education to understand the terms of the Surrender and Release Forms.

*See Dougherty v. Teva Pharms. USA*, No. 05-CV-2336, 2008 WL 508011, at *6 (E.D. Pa. Feb. 20,

2008) ("[H]aving a college education isn't a necessary prerequisite."). Overall, the factors support

the conclusion that Lins voluntarily signed the Surrender and Release Forms.

Of course, "mere voluntariness is not enough to support enforcement of a release-dismissal

agreement." *Cain*, 7 F.3d at 381. Rather, "[t]he party seeking to enforce the agreement must show

that upon balance the public interest favors enforcement." *Id.* The court, nevertheless, finds that

the public interest in the application of the releases in this case is strong enough to enforce them.

Specifically, the court recognizes the PSPCA's interest in "protecting [its] officials from the

burdens of defending 'marginal' or 'frivolous' section 1983 claims," as well as its interest in

"expeditiously resolving minor criminal charges while allocating [its] scarce resources" to the

investigation of other, perhaps more serious animal cruelty offenses. *Id.* at 380 (quoting *Rumery*,

480 U.S. at 395–96 (plurality opinion)). If the PSPCA were able to be sued by every criminal

offender it investigates, searches, and ultimately rescues abused animals from, the organization

could very well end up dedicating less time to its important mission, either due to a diversion of

funding to litigation expenses or even general dissuasion caused by the onslaught of such litigation.

Thus, because the public interest favors the enforcement of the Surrender and Release Forms, the

court finds that said forms exculpate the defendants from Lins' constitutional claims.

b.   Negligence Claim

Regarding Lins' remaining negligence claim, the court must also find for the defendants.

To start, because the court has found that the Surrender and Release Forms are enforceable as to

Lins' constitutional claims, meaning there are no more federal questions at issue in the case, the court declines to continue exercising supplemental jurisdiction over the negligence claim. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). This alone is enough to enter summary judgment in the defendants' favor.

Even if the court were to reach the issue of the Surrender and Release Forms, though, the court would have to find that the release is enforceable as to Lins' negligence claim. "Pennsylvania state law governs the validity of any purported release of [Lins'] state law claims." *Cuchara v. Gai-Tronics Corp.*, No. 03-6573, 2004 WL 1438186, at *8 (E.D. Pa. Apr. 7, 2004). "Written releases are construed according to the rules governing the construction of contracts generally." *Sparler v. Fireman's Ins. Co.*, 521 A.2d 433, 434 (Pa. Super. 1987). "[I]n determining whether an agreement is enforceable, [the court] must examine whether both parties have manifested an intent to be bound by the terms of the agreement, whether the terms are sufficiently definite, and whether consideration existed." *Kelly v. Carman Corp.*, 229 A.3d 634, 653 (Pa. Super. 2020) (quoting *Cardinale v. R.E. Gas Dev. LLC*, 74 A.3d 136, 140 (Pa. Super. 2013)). "[A] contract's meaning must be ascertained from its contents alone when its language is clear and unequivocal." *Slomowitz v. Kessler*, 268 A.3d 1081, 1088 (Pa. Super. 2021).

Here, the record shows that, at the very least, the second Surrender and Release Form is valid under Pennsylvania law. Regarding manifest intent, there is no question that the PSPCA intended to be bound by the terms of the second form. Moreover, there is no genuine dispute of material fact as to Lins' intent. As established above, the defendants have provided evidence that support the conclusion that Lins willingly entered into the agreement with the PSPCA. *See supra* pp. 11–12. All Lins offers in response are multiple statements claiming that he has no recollection

of signing the Surrender and Release Forms, which the court has already explained creates no genuine dispute. *See supra* pp. 12–13. Next, the record clearly shows the existence of consideration, namely Lins' release and surrendering of his dogs in exchange for a lesser sentence in his criminal case. *See* Defs.' Reply, Ex. O, Boyd/McGarrigle Email at ECF p. 26. Finally, the court finds that the terms of the release clause at issue are "sufficiently definite." *See supra* pp. 15–16. Accordingly, with all the elements of a contract met, the defendants are released from liability when it comes to Lins' negligence claim.

*   *   *

Releases are a complicated subject. They put in tension two fundamental axioms of the court: one, that "every litigant deserves [their] day in court," *Trs. of the Gen. Assembly of the Lord Jesus Christ of the Apostolic Faith, Inc v. Patterson*, 527 F. Supp. 3d 722, 767 (E.D. Pa. 2021), and two, that "it is the function of the courts to interpret . . . contracts and to enforce them as made." *Chester City Sch. Auth. v. Aberthaw Constr. Co.*, 333 A.2d 758, 762–63 (Pa. 1975). This is precisely why the law requires courts to find releases unenforceable under certain conditions. Lins has, nevertheless, failed to convince the court that such conditions exist here. Indeed, barring some grand conspiracy of which the court is unaware, the record before the court overwhelmingly points to Lins having voluntarily signed the Surrender and Release Forms. Accordingly, and with the public interest in mind, they must be enforced.  The court shall therefore grant the defendants' motion for summary judgment in its entirety and enter judgment for the defendants.

## 2.    The Merits

Even if the Surrender and Release Forms had zero impact on this case, the court would still enter judgment in favor of the defendants as a matter of law on Counts II through V of Lins' amended complaint. For one, Lins' *Monell* claims—Counts II and IV—are inadequate, as he has

not identified any policy or custom that caused his alleged injuries. Moreover, Lins' due process

claims—Counts III and IV—fail because Pennsylvania law provided him with post-deprivation

remedies. Finally, Lins has effectively abandoned his unreasonable seizure claim under Count V.

Accordingly, only Counts I and VI would make it past this summary judgment stage if no release

were at play.[11]

a.    The *Monell* Claims (Counts II and IV)

Lins has not raised proper *Monell* claims under Counts II and IV. To plead a municipal

liability claim under *Monell*,

> a plaintiff must allege that "a [local] government's policy or custom . . . inflict[ed]
> the injury" in question. [*Monell*, 436 U.S. at 694]. "Policy is made when a
> decisionmaker possess[ing] final authority to establish municipal policy with
> respect to the action issues an official proclamation, policy, or edict." *Andrews v.
> City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original)
> (internal quotation marks omitted). "Custom, on the other hand, can be proven by
> showing that a given course of conduct, although not specifically endorsed or
> authorized by law, is so well-settled and permanent as virtually to constitute law."
> *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (Becker, J.); *see also Brown
> v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) ("A custom . . . must have
> the force of law by virtue of the persistent practices of state [or municipal]
> officials." (internal quotation marks omitted) ).

*Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (all alterations but third in

original). Thus, to sue the PSPCA under *Monell*, Lins must point to a PSPCA policy or custom

that brought about his alleged injuries.

Lins has failed to identify any such policy or custom. Indeed, when the defendants noted

this in their summary judgment brief, Lins' only response in the *Monell* section of his opposition

brief was that "[c]ausation has been discussed in the sections above." Pl.'s Resp./Opp'n to Defs.'

Mot. for Summ. J. ("Pl.'s Resp.") at 19, Doc. No. 41. Yet, upon turning to the referenced "sections

---

[11] The court finds enough genuine disputes of material fact regarding Counts I and VI of Lins' amended complaint that, if there were no release, would merit taking the issues to trial.

above" discussing causation, Lins has seemingly only pointed out PSPCA policies that explicitly *prohibit* the destruction of property, inhumane treatment of transported animals, and poor maintenance of vehicles. *See id.* at 7–10. It is unclear to the court how any of these policies inflicted injury onto Lins. Rather, Lins appears to allege that the individual defendants in this case ignored said policies on the specific day that the PSPCA seized his dogs. That itself does not establish the existence of a "policy or custom" needed to sue the PSPCA under *Monell*. Thus, the court must again find for the defendants on Counts II and IV.[12]

b.    The Due Process Claims (Counts III and IV)

Lins has also not raised proper due process claims under Counts III and IV. "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). "Usually, the process that is constitutionally 'due' must be afforded before the deprivation occurs—the state must provide predeprivation process." *Brown*, 269 F.3d at 213 (involving killing of dog by law enforcement). Nevertheless, "[w]hen the complained of conduct is 'random and unauthorized'" in a manner that "ma[kes] predeprivation process impossible," such as in Lins' case, "postdeprivation process is all that is due." *Id.* (second alteration in original) (quoting *Zinermon v. Burch*, 494 U.S. 113, 137 (1990)).

Because Lins had access to post-deprivation process via Pennsylvania law—e.g., conversion—his due process claims must fail. Due process is not deprived when there are "several

---

[12] Lins goes on to say that the "[d]efendants have failed to produce evidence supporting their claim that the harm inflicted upon the dogs during the seizure was solely, or even at all, caused by Lins." Pl.'s Resp. at 19. Nevertheless, Lins ultimately bears the burden of identifying which policy or custom justifies him bringing his *Monell* claims in this case. Thus, while any supposed failure to produce such evidence could support Lins' claims under Count I against the individual defendants, it is immaterial as to whether Count II should survive summary judgment.

common-law remedies available" to the plaintiff. *Hudson v. Palmer*, 468 U.S. 517, 534–35 (1984).

"[A] common law action for conversion . . . is an adequate post-deprivation remedy." *Cruz v. SCI-*

*SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014); *see also MacLaren v. Texas*, No. 12-

3571, 2012 WL 3517585, at *2 (E.D. Pa. Aug. 13, 2012) ("Such allegations do not support a due

process claim because Texas provides an adequate state law remedy, i.e., a tort claim for

conversion, to compensate an individual who has been improperly deprived of property."). Here,

Lins could have sued the defendants for conversion under Pennsylvania law.[13] *See Kia v. Imaging*

*Scis. Int'l, Inc.*, 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010) (defining conversion as "the deprivation

of another's right of property in, or use or possession of, a chattel, without the owner's consent

and without lawful justification" (quoting *Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d

875, 878 (Pa. Super. 1997)); *see also Schulz v. Gendregske*, 544 F. App'x 620, 626 (6th Cir. 2013)

(suggesting that ability to bring state-law conversion claim against animal-control officers for

deprivation of dogs negates possibility of due process claim). Instead, however, Lins prematurely

claimed due process violations via this case without making any attempt to remedy the alleged

deprivation of his property under state law. Accordingly, the court must again find for the

defendants on Counts III and IV.

### c.   Unreasonable Seizure of Computers and Files (Count V)

Finally, the court finds that the defendants are entitled to summary judgment on Count V

because Lins has effectively abandoned the claim. "[A] non-movant's failure to offer any response

to an opposing party's summary judgment arguments constitutes an abandonment of claims left

---

[13] The court does not mean to suggest that conversion is the *only* potential avenue for a post-deprivation remedy that Lins could have taken—the court simply focuses on conversion as one such example. Indeed, Lins' inclusion of his negligence claim in his amended complaint further highlights the remedies afforded to him via state law. Furthermore, the court takes no position on whether Pennsylvania Rule of Criminal Procedure 588 could have provided Lins with adequate due process, as the defendants have claimed. *See* Defs.' Mem. at 14–15.

undefended." *Ardo v. Pagan*, No. 18-5217, 2023 WL 424271, at *14 (E.D. Pa. Jan. 26, 2023) (quoting *Hudson v. Cheyney Univ. of Pa.*, No. 14-2552, 2018 WL 6603870, at *6 n.12 (E.D. Pa. Dec. 14, 2018)). Here, in neither his response brief nor sur-replies has Lins provided any response to the defendants' arguments against his claim of unreasonable seizure of computers. The court must therefore find again in the defendants' favor on Count V.[14]

## IV.   CONCLUSION

For the aforementioned reasons, the court will grant the defendants' motion for summary judgment. The court will enter judgment in favor of the defendants on all counts contained within Lins' amended complaint.

The court will enter a separate order.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[14] Lins and the defendants do dispute whether Officer Nields ever possessed Lins' computers. *See* Pl.'s Facts at 2. To any extent that this qualifies as a response on Lins' part, the court would still have to find for the defendants. The record clearly shows that the Lancaster County District Attorney's Office conducted the forensic examinations of Lins' computers. *See* Defs.' Mem., Ex. M, Digital Forensics Unit Incident Report Form, Doc. No. 36-14. Lins does not appear to dispute this, either. *See* Pl.'s Facts at 2. Meanwhile, Lins has provided zero evidence that Officer Nields or any other defendant tinkered with his computers. Instead, all he says is that the "[d]efendants have produced no evidence that it was the police that damaged the computers and not them." *Id.* Yet, at this summary judgment stage, it is Lins' burden as the non-moving party to counter the defendants' aforementioned evidence with "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (emphasis in original) (citation omitted). Because Lins has given zero counterevidence demonstrating that anybody other than Lancaster County detectives actually handled Lins' computers in any manner that could have damaged them, he has not created any genuine dispute of material fact on the issue.